## United States Bankruptcy Court
### Middle District of Florida

In re   **The Living Truth Ministries, Inc.**                        Case No.   **3:10-bk-02227**
                              Debtor(s)                    Chapter     **11**

Business Case under Chapter 11

## THE LIVING TRUTH MINISTRIES, INC.'S  DISCLOSURE STATEMENT, DATED AUGUST 4, 2010

### I.     INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the business chapter 11 case of   **The Living Truth Ministries, Inc.**  (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the **Chapter 11 Plan** (the "Plan") filed by   **The Living Truth Ministries, Inc.**   on August 4, 2010  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages **4-6** of this Disclosure Statement.  General unsecured creditors are classified in Class 5, and will receive a distribution of 1% of their allowed claims.

#### A.     Purpose of This Document

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,
How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
Who can vote on or object to the Plan,
What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
Why the Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

#### B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

##### 1.     *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be held before a United States Bankruptcy Judge on the Fourth Floor at the United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.  By separate notice, you will receive a time and date of the hearing to confirm the Plan.

##### 2.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the United States Bankruptcy Court, 300 North Hogan Street, 3rd Floor, Jacksonville, Florida 32202. See below for a discussion of voting eligibility requirements.

3.    *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon all interested parties by the date stated on the enclosed order.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Jason A. Burgess, 2254 Riverside Avenue, Jacksonville, Florida 32204.

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor is a **Corporation**.  Since 1996, the Debtor has been in the church business.

### B.    Insiders of the Debtor

The Debtor has one true insider.  Their name, address and interests are listed below:

1.  Kennedy Jacobs, 224 Grand Preserve Way, Daytona Beach, Florida 32117
President/Founder
Mr. Jacobs does not receive a salary buy his expenses are paid by the church.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor  (collectively the "Managers") were:
a.  Kennedy Jacobs, 224 Grand Preserve Way, Daytona Beach, Florida 32117
President/Founder

The Managers of the Debtor during the Debtor's chapter 11 case have been:
b.  Kennedy Jacobs, 224 Grand Preserve Way, Daytona Beach, Florida 32117
President/Founder

2.  After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be:
a.   Kennedy Jacobs, 224 Grand Preserve Way, Daytona Beach, Florida 32117
President/Founder
The responsibilities and compensation of these Post Confirmation Managers are described in section **III D (2)** of this Disclosure Statement.

### D.    Events Leading to Chapter 11 Filing

The Debtor started to experience financial problems when the city of Daytona Beach decided to renovate the area. The original plan was to renovate the area one block at a time which would not have hurt local businesses like the Debtor. However, the city decided to renovate a large area which displaced most of the Debtor's congregation.  Because of the loss of followers the church was unable to meet its ongoing obligations.

The Debtor was forced to file this Chapter 11 case because they were unable to pay all of their expenses.  The main issue was the mortgages on their main building.  They were in a foreclosure case with the first mortgage and could not afford to pay the second mortgage.  Because of the large mortgage debts the church was forced into this Chapter 11 to attempt to restructure the debt.

**E.        Significant Events During the Bankruptcy Case**

The Debtor has hired Jason A. Burgess as general bankruptcy counsel for the Debtor.

By restructuring the mortgages on the property and leasing out space to a child care center the church believes a successful reorganization is possible.

The Debtor does not anticipate filing any Adversary Proceedings unless the need for one arises.

**F.        Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**G.        Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.        Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit B.

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.        What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.        Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |

| | | |
|---|---|---|
| Professional Fees, as approved by the Court. | **$5,000.00** | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | **$1,000.00** | Paid in full on the effective date of the Plan |
| TOTAL | **$6,000.00** | |

### 2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| N/A | | | |
| | | | |

### C.   **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.   *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment | |
|---|---|---|---|---|---|
| 2 | *Secure claim of:* **Wells Fargo Bank, N.A**<br><br>Collateral Description = **1982 MCI Motor Coach**<br><br>Allowed Secured Amount = $ <u>12,088.26</u><br><br>Priority of lien = **PMSI**<br><br>Principal owed = $ <u>12,088.26</u><br><br>Total claim = $ <u>12,088.26</u> | **No** | Impaired | Monthly Payment<br><br>Pmts Begin<br><br>Pmts End<br><br>Interest rate %<br><br>Total Paid | = **$225.36**<br><br>= **Month 1**<br><br>= **Month 60**<br><br>= **4.25%**<br><br>= **$13,521.60** |
| 3 | *Secure claim of:* **National Loan Investors, LP**<br><br>Collateral Description = **511 Fremont Avenue, Daytona Beach, Florida 32114**<br><br>Proof of Claim Amount = $ <u>1,006,392.69</u><br><br>Priority of lien = **First Mortgage**<br><br>Value = <u>**$990,000.00**</u> | **No** | Impaired | Monthly Payment<br><br>Pmts Begin<br><br>Pmts End<br><br>Interest rate %<br><br>Total Paid | = **$5,016.18**<br><br>= **Month 1**<br><br>= **Month 360**<br><br>= **4.25%**<br><br>= $1,805,824.80 |
| 4 | *Secure claim of:* **Church Mortgage and Loan**<br><br>Collateral Description = **511 Fremont Avenue, Daytona Beach, Florida 32114**<br><br>Scheduled Claim Amount = $ <u>400,000.00</u><br><br>Priority of lien = **Second Mortgage**<br><br>Value of Loan= <u>**$0.00**</u> | **No** | Impaired | This creditor will receive the same treatment as the unsecured creditors because there is not sufficient equity for this mortgage. It shall be stripped off the property upon discharge. | |
|  |  |  |  |  |  |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | N/A | | |
| | | | |

### 3. Class[es] of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 5, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | | | |
| 5 | General Unsecured Class | Impaired | Unsecured Creditors will receive a 1% distribution under the Plan of Reorganization. |
| | | | |

### 4. Class[es] of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | N/A | | |

### D. Means of Implementing the Plan

#### 1. Source of Payments

Payments and distributions under the Plan will be funded by the following:

The Debtor will continue to operate its church business and will also lease out space to a child care center.

#### 2. Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Kennedy Jacobs | | Yes | President/Founder | Expenses Only |
| | | | | |

E.      **Risk Factors**

The proposed Plan has the following risks:

Like any business there is a risk that the market for their services may decline.

F.      **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.      **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: The Debtor does not anticipate any negative tax consequences.

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, attached as Exhibit C is a liquidation analysis, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.      **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that no classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.     *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case will be set by the Court and interested parties will receive notice of the date.*

2.     *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.     *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

   holders of claims and equity interests that have been disallowed by an order of the Court;

   holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

   holders of claims or equity interests in unimpaired classes;

   holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

   holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

   administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

4.     *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.     Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.     *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

      2.     *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

**C.**      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor is paying 0% back to unsecured creditors in this plan. Attached as Exhibit C is a liquidation analysis.

**D.**      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

      1.     *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

      2.     *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

**V.**      **EFFECT OF CONFIRMATION OF PLAN**

**A.**      **DISCHARGE OF DEBTOR**

Discharge. On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**B.**      **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## VI.    OTHER PLAN PROVISIONS

N/A

Jason A. Burgess
Florida Bar No. 40757
2254 Riverside Avenue
Jacksonville, Florida 32204
(904) 374-0111
Jason@cwbfl.com

## EXHIBITS

A – Plan of Reorganization

B – Debtor's Schedules of Property

C – Liquidation Analysis

# EXHIBIT A

# United States Bankruptcy Court
## Middle District of Florida

In re   __The Living Truth Ministries, Inc.__                                     Case No.   __3:10-bk-02227__
                                            Debtor(s)               Chapter    __11__

Business Case under Chapter 11

## THE LIVING TRUTH MINISTRIES, INC.'S  PLAN OF REORGANIZATION, DATED AUGUST 4, 2010

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of The Living Truth Ministries, Inc. (the "Debtor") from cash flow from operations and future income.

This Plan provides for __3__ classes of secured claims; __1__ classes of unsecured claims; and __0__ classes of equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 1%.  This Plan also provides for the payment of administrative and priority in full on the effective date of this Plan with respect to any such claim.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   <u>Class 1</u>.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02   <u>Class 2</u>.  The secured claim of Wells Fargo Bank, N.A.

2.03   <u>Class 3</u>.  The secured claim of National Loan Investors, LP

2.04   <u>Class 4</u>.  The secured claim of Church Mortgage and Loan.

2.05   <u>Class 5</u>. All unsecured claims allowed under § 502 of the Code.

### ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

3.01   <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims</u>.  There are no tax claims in this Chapter 11 case.

3.04   <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – Secured Claim of Wells Fargo Bank, N.A. | Impaired | Class 2 is impaired by this Plan, and each holder of a Class 2 Claim will be at $225.36 in months One (1) through Sixty (60) which includes 4.25% interest.  (Total Paid $13,521.60) |
| Class 3 – Secured Claim of National Loan Investors, LP | Impaired | Class 3 is impaired by this Plan, and will be paid $5,016.18 in months One (1) through month Three Hundred Sixty (360) which includes 4.25% interest. (Total Paid $1,805,824.80) |
| Class 4 – Secured Claim of Church Mortgage and Loan | Impaired | Class 4 is impaired by this Plan and will be treated as fully unsecured and the lien will be removed from the property upon discharge. |
| Class 5 – General Unsecured Claims | Impaired | Class 5 is impaired and will receive a 1% distribution under the Plan. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

3

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the eleventh business day after entry of the order confirming plan:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| N/A | |

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the 11th business day following the entry of a confirmation order.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than Fifteen (15) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Kennedy Jacobs will continue to operate the business and will pay the creditors over a period of time with income from the church services and from the lease of space to the day care center.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02    Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

9.01    Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS

**N/A**

Respectfully submitted,

**Jason A. Burgess 40757**
Attorney for the Plan Proponent
2254 Riverside Avenue
Jacksonville, Florida 32204
(904) 374-0111
Jason@cwbfl.com

# EXHIBIT B

B6A (Official Form 6A) (12/07)

In re    **The Living Truth Ministries, Inc.**                                          Case No __**3:10-bk-02227**__
                                          Debtor

## SCHEDULE A - REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **511 Fremont Avenue**<br>**Daytona Beach, Florida 32114** | **Fee simple** | - | **680,000.00** | **1,527,360.79** |

|  | Sub-Total > | **680,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **680,000.00** |  |

__**0**__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

In re   **The Living Truth Ministries, Inc.**                                      Case No.   **3:10-bk-02227**
                                                          Debtor

## SCHEDULE B - PERSONAL PROPERTY - AMENDED

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives | | Investment Account with G.A. Repple & Company | - | 5.19 |
| | | | Checking Account with Bank of America (8044 & 6312) | - | 254.00 |
| | | | Checking Account with Bank of America (6312) (Negative Balance) | - | 0.00 |
| | | | Checking Account with BB&T (2050) | - | 1,376.00 |
| | | | Checking Account with Wachovia Bank (1788) | - | 11.70 |
| | | | Checking Account with Wachovia Bank (3495) | - | 185.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles | X | | | |
| 6. | Wearing apparel | X | | | |
| 7. | Furs and jewelry | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each | X | | | |

Sub-Total >        **1,831.89**
(Total of this page)

__3__   continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                   Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **The Living Truth Ministries, Inc.**                                          Case No.    **3:10-bk-02227**
                                                                Debtor

## SCHEDULE B - PERSONAL PROPERTY - AMENDED
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >          **0.00**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                          Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont

In re    **The Living Truth Ministries, Inc.**                               Case No.  __3:10-bk-02227__
                                          Debtor

## SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims Give estimated value of each | X | | | |
| 22. Patents, copyrights, and other intellectual property Give particulars | X | | | |
| 23. Licenses, franchises, and other general intangibles Give particulars | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories | | **1982 MCI Coach Bus** | - | 8,000.00 |
| | | **1998 Ford Economy Mini Bus** | - | 4,000.00 |
| | | **1992 Ford E250 Van (Not Running)** | - | 300.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Desks, Chairs, Filing Cabinets, Other Office Equipment** | - | 3,500.00 |
| | | **Pews and Pulpit Furniture** | - | 8,000.00 |
| | | **Kitchen Appliances** | - | 1,300.00 |
| | | **Lighting (Chandeliers)** | - | 300.00 |
| | | **Computers, Security Camera and Monitor, Telephones** | - | 3,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business | | **Sound Equipment Including Instruments and organ** | - | 4,000.00 |
| 30. Inventory | X | | | |

|  | Sub-Total > (Total of this page) | 32,400.00 |
|---|---|---|

Sheet  __2__  of  __3__   continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    **The Living Truth Ministries, Inc.**                                    Case No.    **3:10-bk-02227**
                                                    Debtor

## SCHEDULE B - PERSONAL PROPERTY - AMENDED
### (Continuation Sheet)

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 31 | Animals | X | | | |
| 32 | Crops - growing or harvested Give particulars | X | | | |
| 33 | Farming equipment and implements | X | | | |
| 34 | Farm supplies, chemicals, and feed | X | | | |
| 35 | Other personal property of any kind not already listed Itemize | X | | | |

|  | |
|---|---|
| Sub-Total > (Total of this page) | 0.00 |
| Total > | 34,231.89 |

Sheet  **3**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

# EXHIBIT C

**Exhibit C – Liquidation Analysis**

Plan Proponent's Estimated Liquidation Value of Assets

**Assets**

| | | |
|---|---|---|
| a. | Cash on Hand: | $1,831.89 |
| b. | Automobiles: | $12,300.00 |
| c. | Office/Church Equipment: | $20,100.00 |
| d. | Land & Building: | $990,000.00 |

Total Assets at Liquidation Value:     **$1,024,231.80**

**Less**

| | |
|---|---|
| Secured Creditors: | $1,539,360.00 |
| Chapter 7 Trustee Fees & Expenses: | 25% of Recovery or $2,500.00 |
| Chapter 11 Admin Fees: | $6,000.00 |

**Balance for Unsecured Creditors: $0.00**

**Percent of Unsecured Claims Paid in a Chapter 7:  0%**
**Percent of Unsecured Claims Paid in this Chapter 11:  1%**